UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

TANYA LEREE WILLIAMS,                                   No. 17-13118 ta13

         Debtor.

## OPINION

Before the Court is whether the debtor's ex-husband can set off or recoup his alimony and property settlement obligations to her with her property settlement obligation to him. The Court has reviewed the marital settlement agreement between the parties and the applicable law, and concludes that the proposed setoff/recoupment is permissible.

### I. FACTS

Steve Williams and Debtor were husband and wife. Debtor petitioned for divorce in 2016, in New Mexico's Thirteenth Judicial District Court. On September 1, 2017, Debtor and Mr. Williams filed a Verified Marital Settlement Agreement, which they had signed a few days before (the "MSA"). A final divorce decree was entered on October 6, 2017.

Under the MSA, in the section entitled "Community Debts," Debtor agreed, inter alia, that the following would be her sole and separate debts, which she would pay:

> Her Chase cards ending in 3722 and 7829; and
> Her three (3) Capitol 1 cards ending in 9218, 6856 and 5431
> Her Kirtland Federal Credit Union card ending in 8458; and
> Her debt to Shirley Smith; and
> Debt due and owing to Wells Fargo account ending in 1670.

Mr. Williams is liable for the Wells Fargo debt. The record does not indicate if Mr. Williams is liable for any other community debts Debtor agreed to pay.

On the other hand, Mr. Williams agreed, in a section of the MSA entitled "Alimony," that:

> Petitioner [Debtor] is not self-supporting; therefore, Respondent [Mr. Williams] shall pay lump-sum non-modifiable spousal support of $322.00 per month to Petitioner, for a period of ten (10) years, beginning on September 1, 2017 and continuing on the first day of each month thereafter.

Mr. Williams also assumed the sole obligation to pay at least 15 community debts, including the mortgage on the former marital residence.

Debtor filed this bankruptcy case on December 12, 2017, about two months after the divorce was finalized. The case was filed as a chapter 7 case. On December 26, 2017, Debtor filed her bankruptcy schedules and statement of financial affairs. Her Schedule E/F listed no priority claim and $150,678 of general unsecured claims, including the Wells Fargo Bank debt of $16,855.

On January 10, 2018, Debtor filed a motion to convert her case to a chapter 13 case. No objections were filed, and on February 9, 2018, the Court entered the conversion order.

Debtor filed a chapter 13 plan on February 26, 2018, and a corrected version on February 27, 2018. In her plan, Debtor proposes to pay $250 a month for 36 months, or a total of $9,000. Debtor does not propose to pay any secured or priority claims. If attorney fees are $3,500 and trustee fees total $900, about $4,600 would be available to pay general unsecured creditors.[1]

The bar date in this case was April 20, 2018. Four claims were filed, totaling $130,765.82, by Mr. Williams ($18,000); Kirtland Federal Credit Union ($4,086.53); Couture Law ($3,567.48); and New American Funding ($105,111.81).[2] If all filed claims are allowed, the dividend to creditors would be about 3.5%.

Debtor amended her plan on April 23, 2018; the amendment does not affect the issue before the Court.

---

[1] According to the calculation attached to Debtor's plan, Debtor must pay at least $3,180 to satisfy the "best interest of creditors test" set out in § 1325(a)(4).
[2] The New American Funding claim is for a mortgage loan secured by the former marital residence. Mr. Williams retained the house in the divorce and agreed to pay the mortgage.

The asserted basis for Mr. Williams' claim is "Amount owed under Marital Settlement Agreement." Mr. Williams attached the MSA to his proof of claim, and asserted that the "claim is secured by right to setoff." Mr. Williams' offsetting obligations are identified as "Amount owed to Debtor as property settlement and fixed alimony." Also attached to the proof of claim are several bills from Wells Fargo for the credit card account Debtor agreed to pay. The most recent account balance (as of March 16, 2018) was $15,210.62.

Debtor objected to the claim on April 16, 2018, arguing that Mr. Williams' claim is unsecured because he has no right of setoff or recoupment. Mr. Williams disagrees, and argues that he is entitled to set off his alimony and property settlement obligations to Debtor with Debtor's property settlement obligations to him.

## II.     DISCUSSION

A.     <u>Setoff</u>.

Section 553 of the Code provides in part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—
. . .
(2) such claim was transferred, by an entity other than the debtor, to such creditor--
(A) after the commencement of the case;
. . .

The Tenth Circuit stated in *In re Commercial Financial Services, Inc.,* 43 Fed. App'x 309, 311 (10th Cir. 2002): " 'Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy.' *Citizens Bank of Md. v. Strumpf,* 516 U.S. 16, 18, 116 S. Ct. 286, 133 L.Ed.2d 258 (1995)." 43 Fed App'x at 311.

-3-
Case 17-13118-t13    Doc 55    Filed 07/23/18    Entered 07/23/18 15:22:43 Page 3 of 11

Here, any setoff rights Mr. Williams may have would arise under New Mexico law. In New Mexico, setoff is recognized as an equitable right, harkening back to English courts of equity. *See Sunwest Bank of Roswell, N.A. v. Miller's Performance Warehouse, Inc.,* 112 N.M. 492, 494 (S. Ct. 1991). The purpose of setoff is "to achieve equity and justice by adjusting in one suit all conflicting claims between parties that were readily susceptible to an expedient and final resolution. *Id.,* citing *Federal Sur. Co. v. Union Indem. Co.,* 161 Tenn. 621, 33 S.W.2d 421 (S. Ct. 1930).[3] *See also Amaya v. Santistevan,* 114 N.M. 140, 144 (Ct. App. 1992) ("a bank has the well-established common-law right to set off funds on general deposit against a debt owed by a depositor to the bank"); *Walck v. City of Albuquerque*, 117 N.M. 651, 653 (Ct. App. 1994) (allowing setoff of interim wages earned by a reinstated employee against the city's backpay obligation); *Staab v. Garcia Y Ortiz,* 3 N.M. 33 (S. Ct. 1884) (setoff defense allowed). *See generally* N.M.S.A. § 47-8-45 (allowing tenant opposing a petition for restitution of rented residential premises to assert any "legal or equitable defense, setoff or counterclaim"); N.M.S.A. § 39-4C-7(C) (allowing the assertion of a setoff in any money against a foreign-money claim); N.M.S.A. § 42-4-15 (allowing setoff in a real property ejectment action); N.M.S.A. § 59A-41-45 (allowing setoff in the insurance company liquidation context). There does not seem to be anything out of the ordinary about the right of setoff under New Mexico law.

---

[3] "Although the doctrine of set-off was not recognized at common law, it was so absolutely necessary to the administration of justice that a court of equity could not fail to supply it when the common law omitted it, and long prior to the statute of set-offs it had been a familiar and favorite principle of courts of chancery to adjust in one suit all conflicting demands between the parties, which were readily capable of such adjustment, where, from the relations and situation of the parties and from the nature of their mutual claims, equity and justice seemed to require a complete and speedy settlement. Consequently the jurisdiction of equity is not based upon any statutes of set-off, and would exist as well without any such statutes as it now does, and would not be in any sense affected by the repeal of those statutes." *Fed. Sur. Co. v. Union Indem. Co.*, 33 S.W.2d at 421, quoting 24 Ruling Case Law, 803.

A good discussion of setoff is found in *In re Lehman Brothers Holdings Inc.,* 404 B.R. 752 (Bankr. S.D.N.Y. 2009):

> Setoff originated in early Roman law and was later incorporated into the English legal system in 1705. *See* Sepinuck, *The Problems With Setoff: A Proposed Legislative Solution,* 30 Wm. & Mary L. Rev. 51, 51–52 (1988). Setoff became a recognized doctrine of United States bankruptcy law with the passage of the Act of 1800 and is preserved today in section 553 of the Bankruptcy Code. . . . The central premise of the right of setoff is the adjustment of mutual obligations. "The right of setoff ... allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S. Ct. 286, 289, 133 L.Ed.2d 258 (1995) (*quoting Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 528, 33 S. Ct. 806, 57 L. Ed. 1313 (1913)).

404 B.R. at 756.

In general, setoff is proper if the offsetting obligations arose pre-petition and are "mutual." *Id.* at 757. Mutuality exists when "debts and credits are in the same right and are between the same parties, standing in the same capacity." *Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.)*, 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995). Both offsetting claims must be valid and enforceable. *In re Clemens,* 261 B.R. 602, 605 (M.D. Pa. 2001), citing 5 Collier on Bankruptcy ¶ 553.01[1] (15th ed.).

The decision to allow setoff is within the sound discretion of the bankruptcy court. *Lehman Bros.,* 404 B.R. at 757 (citing *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138 (2nd Cir. 1998), and *Bohack Corp. v. Borden, Inc.,* 599 F.2d 1160, 1164 (2nd Cir. 1979). "Equity favors the right of setoff as a means to avoid multiplicity of lawsuits, inconvenience, injustice and inefficient use of judicial resources." *Id.*, citing *Bennett*, 146 F.3d at 139.

On the petition date, Mr. Williams owed Debtor about $38,640 in alimony, together with an unknown amount under the property settlement terms of the MSA. This qualifies as a "debt

owing by such creditor to the debtor that arose before the commencement of the case. . . ." § 553(a). Mr. Williams does not dispute his obligation to pay this debt.

Similarly, it appears undisputed that Debtor is indebted to Mr. Williams under the MSA. The amount is not clear. The minimum amount likely is the unpaid balance of the Wells Fargo credit card. However, if Mr. Williams is liable for the Chase, Capital One, and Kirkland credit card debts identified in the MSA, the claim would increase by about $25,000, according to Debtor's schedules.

Section 553 "only permits setoff of mutual pre-petition debts. It does not permit a creditor to collect a *pre-petition* debt by withholding payment of a *post-petition* debt owed to the debtor." *In re Ruiz,* 146 B.R. 877, 879 (Bankr. S.D. Fla. 1992) (emphasis in original); *U.S. v. Holden*, 258 B.R. 323, 327 (D. Vt. 2000) (quoting *Ruiz*); *In re Enright*, 2015 WL 4875483, at *3 (Bankr. D.N.J) (same); *In re Alliance Well Service, LLC*, 577 B.R. 389, 394 (Bankr. D.N.M. 2017) (citing *In re Myers,* 362 F.3d 667, 672 (10th Cir. 2004)).

Here, even though most of Mr. Williams' payments to Debtor are scheduled to be made post-petition, the debt itself arose entirely pre-petition, and therefore is eligible for offset. The fact that payments on the debt are not due until post-petition makes no difference. In *Traders Bank of Kansas City v. Stonitsch,* 24 B.R. 75 (Bankr. W.D. Mo. 1982), for example, the court held:

> It is patent law on the issue of setoff, however, that "the right of setoff may be asserted in the bankruptcy case even though at the time the petition is filed one of the debts involved is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated. Nor is it necessary that the debt sought to be setoff be due when the case is commenced." 4 Collier on Bankruptcy para. 553.10(2), pp. 553-49, 553-50 (1982). In this case, in which there can be no question about the existence of the debt, and the fact that it was "absolutely owing," albeit as yet unmatured, the bank's right of setoff must be regarded as manifestly present.

24 B.R. at 76. *See also CDI v. U.S. Electronics, Inc. (In re Communication Dynamics, Inc.),* 382 B.R. 219, 233-34 (Bankr. D. Del. 2008) (a claim arises when the right to payment accrues, not when payment is due); *In re Young*, 144 B.R. 45, 46 (Bankr. N.D. Tex. 1992) (setoff is permitted if, on the petition date, the debt is owing but not presently due); *Rozel Indus., Inc. v. I.R.S. (In re Rozel Indus., Inc.),* 120 B.R. 944, 949 (Bankr. N.D. Ill. 1990) (not required that the amount be currently due, only that some definite liability has accrued). *See generally Collier on Bankruptcy* ¶ 553.03[1][b] (16th ed.) ("In general, a claim is considered to have arisen before the commencement of the case if liability arose before the petition date").

The Court found three bankruptcy cases that did not allow setoff in divorce-related disputes. In *Ampel v. Ampel (In re Ampel),* 2006 WL 6593821, at *3 (Bankr. N.D. Ga. 2006), the court held that the ex-spouse's alimony obligation arose post-petition, even though the divorce decree was entered pre-petition and contained offsetting alimony and property settlement obligations. In *In re Maron,* 2016 WL 447752, at *3 (Bankr. E.D.N.C.), the court found a lack of mutuality because "the suit for alimony inures to the benefit of the wife, while child support is for the child even though paid to the spouse for property disbursement." Finally, in *Hart v. Hart (In re Hart),* 50 B.R. 956, 962 (Bankr. D. Nev. 1985), the court found that the non-debtor's child support obligation is not "absolutely owing" because the state divorce court could alter the amount. The rationale in these cases for denying setoff is weak. It appears that the *Ampel, Maron, and Hart* courts decided that setoff should not be allowed, then tried to find a basis upon which to deny it. It would have been better simply to deny setoff on equitable grounds.

Other divorce bankruptcy cases have allowed setoff. In *Walker v. Horton (In re Horton),* 31 B.R. 464, 466 (Bankr. M.D. Pa. 1983), the court allowed the setoff of a creditor's alimony obligation with the debtor's property settlement obligation. Similarly, in *Rushlow v. Rushlow (In*

*re Rushlow),* 277 B.R. 216, 225 (Bankr. D. Vt. 2002), the court allowed setoff of pre-petition child support obligation against pre-petition property settlement obligation). *See also In re Romano*, 52 B.R. 586, 590 (Bankr. M.D. Fla. 1985) (setoff allowed against alimony); *Mitan v. Mitan*, 894 F.2d 1336, at *1 (6th Cir. 1990) (unpublished) (Sixth Circuit affirmed a district court decision dismissing the debtor's challenge to a setoff provision in a divorce decree, which allowed the ex-spouse a right of offset in the event debtor filed for bankruptcy relief).

Here, the Court concludes that setoff is available and should be allowed. All the elements required for setoff are met: The debts at issue are mutual; both debts arose pre-petition; and both are valid and enforceable. Further, as discussed below, equity favors allowing setoff in this case.

B. Recoupment.

Recoupment is an equitable doctrine that, in bankruptcy, permits a creditor to withhold funds owed to the debtor if the debtor owes money to the creditor arising from the same transaction. Recoupment is a subset of setoff. *See United States v. Bond,* 486 B.R. 9, 42 (E.D.N.Y. 2012), *reversed on other grounds*, 762 F.3d 255 (2nd Cir. 2014) (recoupment "involves a special subset of setoff"). In *Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.)*, 82 F.3d 956 (10th Cir. 1996), the Tenth Circuit stated:

> Although modern counterclaim doctrine has replaced common law recoupment in most areas of the law, recoupment remains a distinct doctrine in bankruptcy cases, *Davidovich v. Welton (In re Davidovich),* 901 F.2d 1533, 1537 (10th Cir. 1990) (per curiam). Originally an equitable rule of joinder for claims arising out of a single transaction, recoupment allowed adjudication in one suit of two claims that otherwise had to be brought separately under the common law forms of action. *Id. Davidovich* described recoupment as follows:
>
>> In the modern bankruptcy setting, this rule [of recoupment] has evolved to permit a creditor to offset a claim that " 'arises from the same transaction as the debtor's claim,' " without reliance on the setoff provisions and limitations of [11 U.S.C.] section 553, because the creditor's claim in this circumstance is " 'essentially a defense to the debtor's claim against the creditor rather than a mutual

> obligation, and application of the limitations on setoff in bankruptcy would be inequitable.'"
>
> *Id.* (quoting *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir. 1984)).

82 F.3d at 959. The *Peterson* court continued:

> The doctrine of recoupment may be better understood by way of comparison with the doctrine of setoff. Setoff, codified in 11 U.S.C. § 553(a), gives a creditor the right "to offset a mutual debt owing by such creditor to the debtor" provided that both debts arose before commencement of the bankruptcy action and are in fact mutual. [*See In re Davidovich,* 901 F.2d at 1537]. The creditor's mutual debt and claim generally arise from *different* transactions. 4 *Collier on Bankruptcy* § 553.03, at 553–14 (Lawrence P. King et al. eds., 15th ed. 1996). "Recoupment, on the other hand, is the setting up of a demand arising from the *same transaction* as the plaintiff's claim or cause of action . . . ." *Id.* at 553–15. Recoupment allows the defendant, in a suit between the estate and another, "to show that because of matters arising out of the transaction sued on, he or she is not liable in full for the plaintiff's claim." *Id.* at 553–17. Thus, recoupment is an equitable doctrine that allows the determination of a "just and proper liability" regarding such a claim. *Id.*

*Id* at 959-60.

There is no precise definition of the "same transaction" requirement. 5 Collier on Bankruptcy ¶553.10[1] (16th ed.). However, if the offsetting obligations are found in a single contract, courts usually find that the "same transaction" requirement has been met. *See, e.g., In re B&L Oil Co.,* 782 F.2d 155, 158-59 (10th Cir. 1986) (oil division order is a single contract and subject to recoupment); *In re Flagstaff Realty Associates,* 60 F.3d 1031, 1035 (3d Cir. 1995) (lease); *In re Clowards, Inc.,* 42 B.R. 627 (Bankr. D. Idaho 1984) (construction contract); *In re Holford,* 896 F.2d 176 (5th Cir. 1990) (lease).

In bankruptcy, recoupment should be allowed if the claims "are so closely intertwined that allowing the debtor to escape its obligation would be inequitable . . . ." *In re Beaumont*, 586 F.3d 776, 781 (10th Cir. 2009) (quoting *Peterson Dist.*, 82 F.3d at 960). *See also Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1401 (9th Cir. 1996) (recoupment should be allowed if "it

-9-
Case 17-13118-t13    Doc 55    Filed 07/23/18    Entered 07/23/18 15:22:43 Page 9 of 11

would . . . be inequitable for the debtor to enjoy the benefits of [a] transaction without meeting its obligations") (quoting *In re University Medical Center,* 973 F.2d 1065, 1081 (3rd Cir. 1992)).

Here, the offsetting obligations relate to the MSA, a single contract. In fact, the obligations are set out on the same page (page 6) of the MSA. The Court finds that the obligations are part of the same transaction. Thus, recoupment would apply unless the facts of the case indicate that allowing recoupment would be inequitable.

The Court concludes the equities favor recoupment. As between Mr. Williams and Debtor, the Court finds that allowing recoupment is justified. It would be unfair to force Mr. Williams to pay as agreed, while allowing Debtor not to pay her obligation to Mr. Williams. Debtor may have had bankruptcy in mind when she agreed to the MSA, since the case followed on the heels of the divorce decree. It is somewhat of a sharp practice for an ex-spouse to agree to pay money to or for the benefit of the other spouse, but then promptly file bankruptcy and attempt to avoid the obligation. The injury is compounded if the debtor also seeks to prevent setoff or recoupment.

Parties to a voluntary marital settlement agreement should be prepared to accept both the benefits and the burdens of the agreement. If one spouse wants only the benefits, and files bankruptcy to force the ex-spouse to shoulder all of the burdens, he or she should not be surprised if the ex-spouse resists the effort.

Granted, recoupment gives the recouping creditor an advantage that other creditors do not have. *Beaumont*, 586 F.3d at 780, citing *Peterson Distributing,* 82 F.3d at 960. Here, however, creditors would not be adversely affected. Under the current plan, if no setoff or recoupment is allowed, general unsecured creditors would receive about a 3.5% dividend. If recoupment is

allowed, that percentage would go up to about 4%, because Mr. Williams' $18,000 claim would be taken out of the claims pool.[4] Creditors would benefit if Mr. Williams is allowed to recoup.

### III. CONCLUSION

Mr. Williams has state law rights of offset and recoupment, and equity favors allowing him to exercise those rights. Because Debtor's objection to Mr. Williams' proof of claim is based on his setoff/recoupment rights, the objection is overruled. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: July 23, 2018

Copies to: counsel of record

---

[4] There is some chance the $105,000 claim filed by New American Funding could be challenged, because Mr. Williams assumed the debt in the MSA, kept the collateral (the former marital residence), and is paying the mortgage. If such a challenge were successful, the dividend to general unsecured creditors would go up substantially.